UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOSEPH T. BURRELL, | CASE NO. 5:11CV1627 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

Joseph T. Burrell ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court reverses the decision of the ALJ and remands this case for further proceedings consistent with this Memorandum Opinion & Order:

I.  **PROCEDURAL AND FACTUAL HISTORY**

On June 26, 2007, Plaintiff filed applications for DIB and SSI, alleging disability beginning November 20, 2000 due to a heart condition, breathing problems and hip problems. ECF Dkt. #11 at 169-177, 222, 236.[1] The SSA denied Plaintiff's applications initially and on reconsideration. *Id.* at 109-121. Plaintiff filed a request for an administrative hearing and on January 8, 2010, an ALJ conducted the hearing by video teleconference. *Id.* at 77-79, 124. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 78.

On March 12, 2010, the ALJ issued a decision denying benefits. ECF Dkt. #11 at 60-72. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id.* at 50-59. On August 4, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On January 9, 2012, Plaintiff filed a merits brief. ECF Dkt. #14. On January 17,

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

2012, upon receiving permission from the Court, Plaintiff filed an amendment to his merits brief to include an additional argument. ECF Dkt. #s 15-16. On April 2, 2012, Defendant filed a merits brief and on April 3, 2012, Plaintiff filed a reply. ECF Dkt. #s 18, 19.

## II.    RELEVANT MEDICAL EVIDENCE

Plaintiff was 27 years old on his alleged date of disability in 2000. ECF Dkt. #11 at 169. Plaintiff was admitted to the hospital after suffering a myocardial infarction in November 2000 and diagnosed with acute anterior myocardian infarction, coronary artery disease, hypercholesterolemia and cigarette use. *Id*. at 368. He underwent a left and right cardiac catheterization with coronary angiography and left ventriculography, stenting of the mid left anterior descending artery, and an intra-aortic balloon pump placement. *Id*. Upon discharge, the doctor put Plaintiff on medications including aspirin, Plavix, Lipitor, and Nitroglycerin, told him to begin a low animal fat diet and to follow up with the doctor. *Id*. at 369.

On December 28, 2000, Plaintiff was readmitted to the hospital with an acute anterior wall myocardial infarction. ECF Dkt. #11 at 370. It was noted that Plaintiff had stopped taking the Plavix that he was previously prescribed and presented to the hospital with an acute thrombus of the anterior descending artery at the site of the stent. *Id*. He underwent a left heart catheterization with angioplasty to the left anterior descending artery and a laprascopy with open cholecystectomy. *Id.* Final diagnoses included acute anterior wall myocardial infarction, acute cholecystitus, coronary artery disease, tobacco abuse, severe left ventricular dysfunction and hypercholesterolemia. *Id.* Upon discharge, Plaintiff was prescribed medications, told to maintain a low-fat, low sodium diet and to not lift anything heavier than three to five pounds. *Id.* at 371. The doctor noted that he had told Plaintiff of the importance of monitoring and medication compliance, and "[s]econdary to his acute anterior wall myocardial infarction times two, he is well aware of his increased mortality." *Id.*

On May 18, 2003, Plaintiff presented to the emergency room complaining of chest pain. ECF Dkt. #11 at 380. The record noted that Plaintiff continued to smoke and "does not take aspirin or any other medications." *Id.*    Dr. Silver performed a left heart catheterization, a left ventriculography and a right and left selective coronary arterigraphy. *Id*. at 394. It was also noted

that Plaintiff was non-compliant with his Coumadin therapy, medications, and follow-up monitoring. *Id.* Dr. Silver's impressions included decreased left ventricular function with large anteroapical and distal inferior akinesis, with an ejection fraction of 35%, a patent stent in the mid left anterior descending artery, and chronically totally occluded right coronary artery with right-to-right and left-to-right collaterals. *Id.*

On April 5, 2006, Plaintiff was taken to the emergency room after experiencing chest pain. ECF Dkt. #11 at 471. He indicated that the pain was mid sternal and radiated to the left arm, left chest and lasted about ten to fifteen minutes. *Id*. He related that he was sitting down playing a video game when he experienced the pain and tried to find his Nitroglycerin but could not find it. *Id*. He called 911 and the emergency medical team arrived and gave him two Nitroglycerin sprays, which stopped the chest pain. *Id.* Physical examination, blood work and chest x-rays showed normal results and Plaintiff was advised to be admitted into the hospital for further testing. Id. Plaintiff refused due to the cost of admission and was informed of the "the risk of having acute MI, even death, if he goes home." *Id*. Plaintiff signed out against medical advice, was diagnosed with acute chest pain, and was advised to use the Nitroglycerin as needed, to follow up with his physician, and advised that he may need stress testing and a cardiac catheterization. *Id.* He was discharged pain free and in stable condition. *Id*.

On October 15, 2006, Plaintiff presented to the emergency room with complaints of chest pain and was admitted to the hospital to undergo an emergency cardiac catheterization which showed a severe left ventricular dysfunction with an ejection fraction of 15% to 20%. ECF Dkt. #11 at 274. It was noted that he reported having no medications at home and that he had discontinued all of his heart medications following his 2003 surgery. *Id*. at 270. He underwent an off-pump coronary revascularization x2, left internal mammary artery grafted to the left anterior descending coronary artery, right internal mammary artery grafted to the distal right coronary artery. *Id*. Plaintiff was diagnosed with coronary artery disease and congestive heart failure. *Id.*

Dr. Thomas Murray, Plaintiff's treating physician, indicated in his treatment notes that he treated Plaintiff on July 6, 2005, July 27, 2005, November 3, 2006, November 17, 2006, June 28, 2007, July 16, 2007, August 17, 2007, September 21, 2007, October 30, 2007, January 3, 2008, and

-3-

numerous times throughout 2009.  ECF Dkt. #11 at 555-556, 564, 569, 582.  In 2007, Dr. Murray found that Plaintiff was in Stage IV of the New York Heart Association Classification, which is the most severe stage where patients are not able to perform any physical activity without discomfort. *Id*. at 556; http:/www.abouthf.org/questions_stages.htm ("NYHA Classication - The Stages of Heart Failure").  Dr. Murray indicated in his treatment note for June 28, 2007 that Plaintiff was "[u]nable to work, in any physical labor, N.Y. Stage 4 C.A.D."  *Id*. at 556.

On September 17, 2007, Dr. Humphrey performed a consultative examination of Plaintiff for the agency.  ECF Dkt. #11 at 483.  He related Plaintiff's medical history, which included four myocardial infarctions and two stent placements, and a open heart bypass operation in 2006.  *Id.* at 483-484.  He noted Plaintiff's complaints of chest pain with mild to moderate activity.  *Id*.  Dr. Humphrey noted Plaintiff's report that he used Nitroglycerin about one time per week.  *Id.*  The doctor noted that Plaintiff continued to smoke one pack of cigarettes per day.  *Id.*  Dr. Humphrey's physical examination revealed only scattered rhonchi in Plaintiff's lungs and his impressions included arteriosclerotic heart disease with status post coronary artery bypass graft and history of myocardial infarction and chronic congestive heart failure, hyperlipidemia, history of nicotine addiction and chronic depression.  *Id.* at 483-484.  He noted that Plaintiff was Class II of the New York Heart Classification for Heart Failure, which is slight limitation of physical activity, with comfort at rest, but fatigue, palpitation or dyspnea with less than ordinary activity.  *Id.* at 493; http:/www.abouthf.org/questions_stages.htm

Dr. Humphrey ordered an echocardiogram which showed a dilated left ventricle and mild left ventricular systolic function with low ejection fraction of 55%.  ECF Dkt. #11 at 490.  Plaintiff exercised on a Bruce Protocol (treadmill stress test) for 3 minutes at 4.8 METS and had to stop due to leg weakness and "extreme" shortness of breath.  *Id*. at 497.

Plaintiff underwent a sleep study in January 2010, which showed moderate obstructive sleep apnea.  ECF Dkt. #11 at 593-594.

Both of the agency reviewing physicians concluded that Plaintiff could work.  ECF Dkt. #11 at  516-523, 546-553.  On November 21, 2007, Dr. Villanueva completed a physical RFC form and found that despite his coronary artery disease and status post coronary artery bypass of 2006,

-4-

Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally, stand/walk and/or sit up to six hours per eight-hour workday, push and pull with unlimited ability, and could never climb ladders, ropes or scaffolds or be exposed to concentrated amounts of extreme cold or heat. *Id.* at 516-523. As support for his conclusions, Dr. Villaneuva noted Plaintiff's coronary artery disease and bypass, as well as the stent placements, and he cited to Plaintiff's Bruce Protocol test, noting that he exercised to 4.8 METS but the test was terminated due to leg pain and shortness of breath, but Plaintiff did not report any chest pain. *Id.* at 517.

On July 2, 2008, Dr. Caldwell examined Plaintiff's file and completed a physical RFC form in which she found that despite his coronary artery disease and hip arthalgia, Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally, stand/walk and/or sit up to six hours per eight-hour workday, push and pull with unlimited ability, and could never climb ladders, ropes or scaffolds, and only occasionally climb ramps or stairs, and should avoid exposure to concentrated amounts of extreme cold or heat. ECF Dkt. #11 at 546-553. As evidence supporting her conclusions, Dr. Caldwell referred to Plaintiff's prior medical history of four heart attacks and a coronary bypass, as well as Plaintiff's weight of 230 pounds. *Id.* at 547. Dr. Caldwell also cited to Plaintiff's Bruce Protocol where the test was stopped at 3 minutes at 4.8 METS due to shortness of breath and leg weakness, but not because of chest pain. *Id.* The doctor also noted a January 8, 2008 physical examination which showed normal breath sounds, no rales, and no bronchi, wheezing or pleuritic rubs. *Id.* at 547-548.

### III. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his decision, the ALJ determined that Plaintiff suffered from coronary artery disease, status post myocardial infarction and stenting in 2000 and 2003 and coronary bypass surgery on October 23, 2006; hypertension; obesity; obstructive sleep apnea; sprain and strain of the hips; and depressive disorder not otherwise specified, which qualified as severe impairments under 20 C.F.R. §404.1520 *et seq*. and 20 C.F.R. § 416.920 *et seq*. ECF Dkt. #11 at 65. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* at 66-68. He discounted Plaintiff's allegations of symptoms and limitations and concluded that

Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the restrictions of never climbing ladders, ropes or scaffolds; only occasionally climbing ramps and stairs; no concentrated exposure to extreme heat, extreme cold or to hazards like heights and machinery; and he is limited to understanding, remembering and executing simple instructions. *Id.* at 68.  Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could not return to performing his past relevant work as a lathe machine operator and laborer, or a security guard, but he could perform the jobs of sorter/inspector, assembler, and cashier, which existed in the national economy in signicant numbers. *Id*. at 70-71.

## IV.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope

by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## VI. ANALYSIS–STEP THREE DETERMINATION

In the amendment to his merits brief, Plaintiff asserts that the ALJ erred in finding that his heart condition did not meet Listing 4.02 for chronic heart failure. ECF Dkt. #16 at 616. Plaintiff provided notice of the filing of his amendment by filing a motion for leave in which to do so by electronically filing with this Court on January 16, 2012. ECF Dkt. #15. The Court granted leave in which to file the amendment and the amendment was electronically filed with the Court on January 17, 2012. ECF Dkt. #16. Defendant thereafter filed a motion for an extension of time within which to file his brief on March 1, 2012, well after receiving the January 17, 2012 amendment. ECF Dkt. #17. The Court granted the motion, giving Defendant until April 2, 2012 to file his merits brief. *See* ECF Dkt. Entry 03/01/2012.

Defendant filed his merits brief on April 2, 2012. ECF Dkt. #18. However, despite electronic receipt of Plaintiff's amendment to his merits brief, Defendant did not address Plaintiff's only assertion in that amendment, that is, that the ALJ erred in finding that his heart condition did not meet Listing 4.02, specifically, Listing 4.02(A)(1) and (B)(3)(a) for chronic heart failure. ECF

-7-

Dkt. #16.

Listing 4.02 in its entirety provides:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
>> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>>
>> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
>> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>>
>> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>>
>> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>>
>>> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
>>>
>>> b.Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
>>>
>>> c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>>>
>>> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

Listing 4.02.

The ALJ did address Listing 4.02 in his decision, but he only briefly discussed one of the two

-8-

parts of that Listing identified by Plaintiff in his amendment. ECF Dkt. #11 at 66. The ALJ began by indicating that he had received a letter from Plaintiff's counsel regarding Plaintiff's heart condition meeting Listing 4.02. ECF Dkt. #11 at 66, citing ECF Dkt. #11 at 258-259. In that letter, counsel for Plaintiff raised the requirements of meeting Listing 4.02(A)(1) and (B)(3)(a) and argued that Plaintiff's heart condition met those sections of the Listing. ECF Dkt. #11 at 258-259. He cited to the Bruce Protocol test ordered by Dr. Humphrey at the 2007 consultative examination which was stopped at 3 minutes at 4.8 METS due to Plaintiff's extreme shortness of breath and leg weakness. *Id.* at 259. Counsel pointed out that the same consultative examination showed echocardiogram results of a LVED measurement of 6.03 cm and an ejection fraction of 55%. *Id.* Counsel cited to these findings and asserted to the ALJ in his letter that Plaintiff's condition met Listing 4.02. *Id.*

In his decision, the ALJ cited Listing 4.02(A)(1) and (2) and found that the evidence cited by Plaintiff's counsel in his letter related to events when Plaintiff's condition was not stable and the Listing required that Plaintiff's impairments be assessed during a stable period. ECF Dkt. #11 at 66. However, the ALJ cited to no evidence indicating that Plaintiff's condition was unstable during the periods in question. In fact, in his decision, the ALJ notes that Plaintiff's "cardiac condition was stable" when referring to Dr. Humphrey's November 2007 findings that ordered the Bruce Protocol. *Id.* at 66, 259.

The ALJ also cited to evidence regarding Plaintiff's activities of daily living in finding that Plaintiff's condition did not meet Listing 4.02. ECF Dkt. #11 at 66. However, the activities of daily living concerns Listing 4.02(A) and (B)*(1)*, not Listing 4.02(A) and (B)*(3),* the section of Listing 4.02 argued by Plaintiff's counsel in his letter to the ALJ and before this Court. Further, the ALJ in his RFC portion of his decision explained that he granted probative weight to opinions of the state agency physicians who found that Plaintiff could perform light work and he granted little weight to the opinions of Dr. Murray who found Plaintiff unable to work. ECF Dkt. #11 at 70. In discounting the weight of Dr. Murray's opinions, the ALJ noted that the ultimate determination of disability is for the ALJ to determine, not a treating physician. *Id.* While this is correct, it is not the sole reason upon which the ALJ relied in order to give little weight to Dr. Murray's opinions. The ALJ also cited the limited familiarity of Dr. Murray with Plaintiff, indicating that Dr. Murray treated Plaintiff only twice in 2005 twice in November of 2006 and on June 28, 2007, prior to writing his opinion,

-9-

which was issued well after Plaintiff's date last insured. *Id*. However, the ALJ relied upon the opinions of a state examining doctor who examined Plaintiff only once, well after his date last insured, and the opinions of the other agency doctors, who only reviewed Plaintiff's file and issued their opinions. *Id.* Those agency reviewing physicians based their opinions upon Plaintiff's performance on the Bruce Protocol in 2007, which did not produce chest pain, but was stopped at 3 minutes at 4.8 METS due to Plaintiff's leg weakness and extreme shortness of breath, referred to as dyspnea in Listing 4.02(B)(3)(a).

Without more as to whether Plaintiff's heart condition met or equaled Listing 4.02(A) and (B)(3)(a), the Court cannot ascertain whether substantial evidence supports the ALJ's determination. Accordingly, the Court REVERSES the decision of the ALJ and REMANDS this case for redetermination and analysis as to whether Plaintiff's heart conditions meet or equal the Listings.

Since the remand of this case may impact Plaintiff's other assertions that concern the ALJ's findings at Step Three and beyond, the Court declines to address them at this time.

## VII. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case for reevaluation, analysis and determination of the ALJ's Step Three findings.

DATE: September 25, 2012     */s/George J. Limbert*
               GEORGE J. LIMBERT
               UNITED STATES MAGISTRATE JUDGE